## Brooks v. Ford Motor Co.

*Arthur T. McDermott,* for plaintiff.

*Gregory S. Olsavick,* for defendants Ford Motor Co. and Ford Motor Credit Co.

*Mark Danowitz,* for defendant Family/Ford Mercury, Inc.

BAYLEY, *J.,* October 1, 1986—Individual plaintiff has filed a complaint against the Ford Motor Company, the Ford Motor Credit Company and Family Ford/Mercury, Inc., for civil relief grounded upon Pennsylvania's Automobile Lemon Law. Act

of March 28, 1984, P.L. 150, §1, 73 P.S. §1951 et seq. She avers that she entered into a lease/purchase option agreement on May 22, 1985 for a 1985 Mercury Lynx. Ford Motor Company manufactured the vehicle. Family Ford/Mercury, Inc.; was the lessor and agent for Ford Motor Company and Ford Motor Credit Company, the latter of which is the assignee of the May 22, 1985 contract.

Plaintiff avers that she received a written express warranty from the Ford Motor Company for the vehicle. The May 22, 1985 contract provided that the vehicle was leased to the plaintiff for 48 months with total monthly payments amounting to $3,951.04. Plaintiff was obligated to procure and maintain insurance on the vehicle and to pay all sales, use and other taxes including those charged to the lessor by reason of the lessee's interest in the vehicle (except income taxes), all maintenance and operating costs and all repairs beyond normal wear and tear. If plaintiff defaulted on any monthly payments the lessor was authorized to retake possession of the vehicle and she was required to pay at once the monthly payments for the rest of the lease term and any other amounts owed under the lease.[1] The contract provided:

"(14) Purchase Option: The Lessee has the option to purchase the Vehicle at the end of the Lease for $3500, if the Lessee is not in default under the Lease. The Lessee must notify the Lessor 30 days prior to lease end if the Lessee wants to purchase the Vehicle. Upon payment in cash of the purchase

---

1. A payment off-set to the lessee was provided for if the lessor after resale and costs realized funds in excess of what it would have otherwise realized under the terms of the agreement.

option price plus taxes, the Lessor shall deliver title to the Lessee."

Plaintiff avers that the prerequisites for recovery under the Automobile Lemon Law have been met and that she is entitled to receive a comparable replacement vehicle or a refund of her monthly payments, less a deduction for actual value, plus damages due to her lost time and wages and for her attorney's fees and costs. Defendants' Ford Motor Credit Company and Family Ford/Mercury, Inc., have filed preliminary objections to the complaint in the form of demurrers, claiming that they did not manufacture the vehicle and therefore are not parties subject to the civil remedies provided for in the Automobile Lemon Law. They also maintain that the specific lease/purchase option contract with plaintiff precludes the application of the Lemon Law against them. Plaintiff concedes these points and accordingly demurrers will be entered as to those two defendants.

The manufacturer of the vehicle, defendant Ford Motor Company, has filed preliminary objections in the form of a motion to strike, a motion for a more specific pleading and a demurrer. The demurrer is grounded upon the averment that this plaintiff under the lease-purchase option contract of May 22, 1985, is not a "purchaser" of the subject vehicle as that term is defined in the Automobile Lemon Law, and therefore is not entitled to any remedial benefits under that law. This is a case of first impression in Pennsylvania. Thirty-two other states have enacted Lemon Laws. The absence of any cases interpreting the term "purchaser" in those jurisdictions reflects the varied legislative approaches to defining the persons entitled to relief under such laws.[2] The pre-

---

2. See appendix.

liminary objections have been briefed and argued and the issue is now ready for disposition.

## DISCUSSION

The Automobile Lemon Law provides remedial civil relief for certain "purchasers" of new automobiles. At 73 P.S. §1958, the act provides:

*"Any purchaser* of a new motor vehicle who suffers any loss due to non conformity of such vehicle as a result of the manufacturer's failure to comply with this act may bring a civil action in the court of common pleas and, in addition to other relief, shall be entitled to recover reasonable attorney's fees and all court costs." (Emphasis added.)

The term "purchaser" is defined at 73 P.S. §1952, as:

"A person, or his successors or assigns, who has obtained ownership of a new motor vehicle by transfer or purchase *or who has entered into an agreement or contract for the purchase of a new motor vehicle which is used* or bought for use *primarily for personal, family or household purposes."* (Emphasis added.)

We conclude that the definition of "purchaser" in the act is broad enough to include this plaintiff. In that regard we are reminded that in Pennsylvania, the substance of the transaction — and not its legal form — dictates the substantive rights of the parties to the transaction. Commonwealth or Monumental Properties, Inc., 459 Pa. 450, 329 A.2d 812 (1974); Henderson v. Benson-Hartman Motors, Inc., 33 D.&C.3d 6 (1983). Plaintiff under the lease/ purchase option agreement is a person intended by the legislature to constitute a purchaser ". . . [w]ho has entered into an agreement or contract for the purchase of a new motor vehicle which is used . . .

primarily for personal family or household purposes." The definition of "purchaser" contains the words "used or bought for use" with respect to a person who has entered into an agreement or contract for the purchase of a new motor vehicle. Plaintiff had the option to purchase the vehicle at the end of the term of the monthly payments; therefore, she had a contract for the purchase of the vehicle which she *used*, as contrasted to *bought for use*, primarily for personal, family or household purposes, and as contrasted to a person who has obtained *ownership* by transfer or purchase.

By defining a "purchaser" to include persons who obtain ownership *and* persons who have entered into a contract or an agreement for the purchase of a new motor vehicle which is "used" as contrasted to "bought for use" the legislature has utilized broad enough language to include a lessee with an option to purchase. Certainly the words are not so explicit that they are not subject to responsible construction. In the construction of words and phrases used by the legislature, the law provides at 1 Pa.C.S. §1921:

"Legislative intent controls

"(a) The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. *Every statute shall be construed, if possible, to give effect to all its provisions. . . .*

"(c) When the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters:

(1) The occasion and necessity for the statute.

(2) The circumstances under which it was enacted.

(3) The mischief to be remedied.

(4) The object to be attained.

(5) The former law, if any, including other statutes upon the same or similar subjects.

(6) The consequences of a particular interpretation. . . ." (Emphasis added.)

Other than the form of the purchase there is no substantial difference between the status of this plaintiff under the lease/purchase option agreement, in which Ford extended her an express written warranty, than if she had paid in full for the vehicle and immediately secured a title, or if she had financed an outright purchase. The occasion and necessity for the statute and the circumstances under which it was enacted were for the purpose of extending stronger remedies to persons who utilize their new vehicles for personal, family and household purposes, in addition to their available remedies under warranty protection pursuant to Article 2 of the Uniform Commercial Code,[3] the Magnuson-Moss Warranty Act[4] and the Pennsylvania Unfair Trade Practices and Consumer Protection Law.[5] For those who use their new vehicle for the stated purposes under the act, the mischief to be remedied is a situation whereby a person with a "lemon" will not be stuck in having to keep the vehicle during an unending effort to have the manufacturer correctly repair a defect.[6] The object to be obtained is to provide such persons special relief, that is, persons who

---

3. 13 Pa.C.S. §1101 et seq.

4. 15 U.S.C. §2301-12 (1984).

5. Act of December 17, 1968, P.L. 1224, as amended November 24, 1976, P.L. 1166, §1, 73 P.S. §201-1 et seq.

6. The act, at 73 P.S. §1955, provides for the remedies of receiving a comparable replacement vehicle of equal value or a calculated refund after the return of the vehicle. If a civil action is required to secure relief, the purchaser is entitled to receive reasonable attorney's fees and all court costs. 73 P.S. §1958.

use their new cars for personal, family and household purposes, not commercial users. The nature of the transaction in which a new vehicle is obtained is not the key to such relief; rather it is the use to which the new vehicle is put that delineates a purchaser who is entitled to relief. The consequences of any other interpretation would exalt form over substance without necessity or purpose. This is especially true since the lemon law is remedial in nature and comes under the ambit of consumer protection in general.

This position is further strengthened when one examines the Uniform Commercial Code which bears, inter alia, upon a similar subject. A purchaser is defined in the code at 13 Pa.C.S. §1201, as "a person who takes by purchase." A purchase is defined in the same location to include a ". . . [v]oluntary transaction creating an interest in property." A contract for sale is defined at 13 Pa.C.S. §2106, to include ". . . [b]oth a present sale and a contract to sell goods at a future time." While the specific definition of "purchaser" is different than the definition in the Lemon Law, neither definition specifically includes or excludes a lessee with an option to purchase. Yet a consumer lessee has been considered a purchaser under Article 2 of the code which applies to a transaction in goods. See J. L. Tell Co., Inc., v. Houston United States, Inc., 491 So.2d 851 (Miss. 1986); Henderson v. Benson-Hartman Motors, Inc., supra.

An annotation at 4 ALR 4th 85, "What Constitutes A Transaction, A Contract For Sale, Or A Sale Within The Scope Of UCC Article 2," at section 18, reviews cases from many jurisdictions involving leases with options to buy that have held that such contracts are analogous to a sale or that there was a sale or a contract for sale. Thus, defining a purchas-

er in the Lemon Law to include a person ". . . [w]ho has entered into an agreement or contract for the purchase of a new motor vehicle . . . ," in addition to a person ". . . [w]ho has obtained ownership of a new motor vehicle by transfer or purchase . . . ," makes a person who has entered into a lease with an option to purchase the holder of a contract to sell at a future time.[7] Clearly, such a contract is also a voluntary transaction creating an interest in property and is analogous to a sale or is the functional equivalent of a sale.

Therefore, the general language in the relevant commercial law of the Uniform Commercial Code, although not identical to the general language in the Lemon Law, has been interpreted to include relief to a lessee, and even more importantly, to a lessee with an option to purchase. This, along with the other factors to be considered at 1 Pa.C.S. §1921, provides support for ascertaining the intention of the legislature in analyzing the terms it used in the Lemon Law. Accordingly, we conclude that the demurrer by Ford Motor Company to plaintiff's complaint must be denied.

Finally, we have examined defendant Ford Motor Company's motion for a more specific complaint and conclude that it is without merit. Plaintiff does concede that she is not entitled to recover her claim for damages for lost time and wages pursuant to the act at 73 P.S. §1958. Accordingly, the following order is entered.

---

7. Phillips v. Teetzner, 357 Pa. 43, 53 A.2d 129 (1947), states that "[A]n option is an offer, which, when accepted, becomes a valid and binding contract." It is therefore a contract to sell at a future time.

## ORDER OF COURT

And now, this October 1, 1986, it is ordered that:

1. The preliminary objection of defendant Ford Motor Credit Company to plaintiff's complaint in the form of a demurrer is sustained. The complaint against Ford Motor Credit Company, is dismissed.

2. The preliminary objection of defendant Family/Ford Mercury, Inc., to plaintiff's complaint in the form of a demurrer is sustained. The complaint against Family Ford/Mercury, Inc., is dismissed.

3. The preliminary objections of defendant Ford Motor Company to plaintiff's·complaint in the form of a demurrer and a motion for a more specific pleading are denied.

4. Plaintiff's demand for damages against defendant Ford Motor Company in the form.of lost time and wages is stricken.

## APPENDIX

1. Most jurisdictions with Lemon Laws use a "consumer" definition such as the Connecticut law which provides:

"(a) As used in this section and section 2 of public act 83-351: (1) 'Consumer' means the purchaser, other than for purposes of resale, of a motor vehicle, any person to whom such motor vehicle is transferred during the duration of an express warranty applicable to such vehicle, and any other person entitled by the terms of such warranty to enforce the obligations of the warranty." Conn. Gen. Stat. Ann. §42-179 (West 1984).

2. Other states that generally use the same type of a consumer definition as Connecticut are:

Arizona-Ariz. Rev. Stat. Ann. §44-1261 (1984-1985);

Colorado-Colo. Rev. Stat. §42-12-101 (1984);
Delaware-Del. Code Ann. tit. vi, 5003 (1984), Act of Dec. 7, 1984;
Hawaii-Hawaii Rev. Stat. §437-3.5 (1984);
Iowa-Iowa Code §322E.1 (1985);
Louisiana-La. Rev. Stat. Ann. §51:1941 (West 1985);
Maine: Me. Rev. Stat. Ann. tit. 10, §1163 (1984-1985);
Maryland-Md. Com. Law Code Ann. §14-1501 (1984);
Massachusetts-Mass. Ann. Laws ch. 90 §7N ½ (Michie/Law. Coop. 1984);
Minnesota-Minn. Stat. Ann. §325 F 665 (West 1984);
Montana-Mont. Code Ann. §61-4-503 (1983);
Nebraska-Neb. Rev. Stat. §60-2703 (1984);
New Hampshire-N.H. Rev. Stat. Ann. §357-D-3 (1984);
New Jersey-N.J. Stat. Ann. §56:12-21 (West 1984-1985);
New York-N.Y. Gen. Bus. Law. §198-a (Consol. 1984-1985);
Oregon-Or. Rev. Stat. §646.335 (1983);
Rhode Island-R.I. Gen. Laws §31-5.2-1 (1984);
Vermont-Vt. Stat. Ann. tit. ix, §4172 (1984);
West Virginia-W.Va. Code §46A-6A-1 (1984);
Wisconsin-Wis. Stat. Ann. §218.015 (West 1984-1985);
Wyoming, Wyo. Stat. §40-17-101 (1984).

3. Washington and Nevada use the term "buyer" in defining a person who is entitled to enforce an express warranty. Wash. Rev. Code §19.118.40 (1985); Nev. Rev. Stat. §598-766 (1983).

4. Illinois defines "consumer" without reference to any other person entitled to enforce the terms of express warranty. "Consumer" is an individual who

purchases. Ill. Rev. Stat. ch. 121½ §1203 (1984-1985).

5. Alaska uses the terms "owner." Alaska Stat. §45.45.300 (1984).

6. Texas uses the term "person." Tex. Stat. Ann. art. 4413(36) (Vernon 1985).

7. Tennessee uses a definition of consumer which specifically includes a lessee and has a provision relating to lease transactions. Tenn. Code Ann. §55-24-103 (1984).

8. Florida, Missouri and Virginia use a "consumer" definition. Their definition of "new motor vehicle" includes ". . . [l]ease purchase vehicles as long as a manufacturer's warranty was issued as a condition of sale." Fla. Stat. Ann. §681-104 (West 1984); Mo. Ann. Stat. §407.560 (Vernon 1985); Va. Code §59.1-207.9 (1984).

9. California uses the term "buyer" which is defined as an individual who buys "consumer goods." "Consumer goods" is defined as "any new product . . . that is used, bought, or leased. . . ." Cal. Civ. Code §1793.2 (1985).

